# EXHIBIT A



**Superior Court of the District of Columbia**
**CIVIL DIVISION – Civil Actions Branch**
500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 2000
Telephone: (202) 879-1133 Website: www.dccourts.gov

FILED
CIVIL DIVISION
AUG 0 6 2025
Superior Court of the
District of Columbia

Case No.    **2025 -CAB- 0 0 5 1 6 3**

## COMPLAINT

Jurisdiction of this Court is founded on D.C. Code § 11-921.

Henry Searcy, Jr
PLAINTIFF

vs

National Football League Players Association
DEFENDANT

12804 Willow Marsh Lane
Address (No Post Office Boxes)

1133 20th Street, Suite 600 NW
Address (No Post Office Boxes)

Bowie, MD 20720
City        State        Zip Code

Washington DC 20036
City        State        Zip Code

(202) 904-9052
Telephone Number

(202) 756-9100
Telephone Number

SearcyH@Supremese.com
Email Address (optional)

Email Address (optional)

1. Write a short and plain statement of your claim, including any relevant facts, dates, and locations:

   SEE ATTACHMENT C

2. What relief are you requesting from the Court? Include any request for money damages.

   SEE ATTACHMENT C

Form CA-3074 [Rev. Nov. 2017]              1              Super. Ct. Civ. R. 3

3.  State any other information, of which the Court should be aware:

_SEE ATTACHMENT C_

**SIGNATURE**

To the best of my knowledge, everything in this Complaint is true and I am not filing this Complaint to harass the Defendant(s). Superior Court Civil Rules 11(b).

**SIGNATURE**

_August 5, 2025_
**DATE**

Subscribed and sworn to before me this _____ 5th _____ day of _August_ 20 _25_.

```
CHRISTIANA OKEKE
NOTARY PUBLIC
PRINCE GEORGES COUNTY
MARYLAND
MY COMMISSION EXPIRES NOVEMBER 6, 2027
```

(Notary Public/Deputy Clerk)

2

ATTACHMENT    C

SUPERIOR COURT OF THE DISTRICT OF COLUMBIA


**HENRY SEARCY, JR.**
12804 Willow Marsh Lane
Bowie, Maryland 20720
(301) 560-8436

       VS.

**COMPLAINT**
CIVIL ACTION NO. **2 0 2 5 -CAB-0 0 5 1 6**
Assigned To:.
Description: Pro Se Gen. Civ. (F-Deck)


**National Football**
 **League Players Association** NW
1133 20TH Street, Suite 600
Washington, DC 20036


**Joe Briggs**
3129 Fort Lincoln Drive NE
Washington, DC 20018


COMPLAINT

NOW COMES the Plaintiff, Henry Searcy, Jr., appearing pro se, and

brings suit against the named Defendants and for cause states as follows:

1

1.  **Write a short and plain statement of your claim, including any relevant facts, dates, and locations:**

**WRONGFUL TERMINATION**

In short, the Plaintiff alleges that upon proving that he passed the NFLPA agent exam, Joe Briggs and the NFLPA provided a fraudulent appeal hearing in order to deprive the Plaintiff of life and liberty of being a NFL agent. Joe Briggs and the NFLPA conducted an appeal hearing accordance with the **Voluntary Labor Arbitration Rules of the American Arbitration Association**.  That said, according to the American Arbitration Association (AAA), the Voluntary Labor Arbitration Rules **did not exist at the time of the Plaintiff's appeal hearing**.   The representative of the AAA said that the Voluntary Arbitration Rules had not been a part of the AAA since the 1980's (Exhibit AAA). The Plaintiff proved that he passed the NFLPA agent exam by proving he was a "test retaker" of the exam as per the contract between the NFLPA and the Plaintiff.  According to the NFLPA the Plaintiff need to score a 48 in order to pass the NFLPA agent exam and upon retaking the exam the Plaintiff scored 46.  Accordingly said argument was presented in his appeal hearing that was conducted according to the Voluntary Labor Arbitration Rules of the AAA.  While the Defendants attempt to cabin Plaintiff's claims within the framework of state tort or contract law, the factual record reveals that Plaintiff's termination from eligibility and future employment as an NFL agent was effectuated by the NFLPA through a process that lacked transparency, objective standards, and meaningful appellate review.

Plaintiff challenges:

[] The scoring of the NFLPA's certification exam;

[] The setting of allegedly arbitrary and discriminatory passing criteria;

[] The denial of certification despite prior qualification and eligibility;

[] The deprivation of a meaningful opportunity to appeal such adverse determinations.

Taken together, these actions are not mere regulatory discretion—they amount to a de facto termination of Plaintiff's occupational status and liberty interest in his profession. Under both federal common law and constitutional jurisprudence, wrongful interference with a protected occupational

2

interest, when done arbitrarily or capriciously, constitutes wrongful termination.

## FOURTEENTH AMENDMENT

The CBA states that the NFLPA "shall have sole and exclusive authority to determine the grounds for denying certification of an agent. In the Plaintiff case that authority was fraudulent. The authority used to terminate the Plaintiff do not exist.  Appendix A of the NFLPA Regulation state "In consideration for the opportunity to obtain Certification and in consideration of the NFLPA's time and expense incurred in the processing of my application for such Certification, I further agree that this Application and the Certification, if one is issued to me, along with the NFLPA Regulations Governing Contract Advisors shall **constitute a contract between the NFLPA and myself**. In response to a Show Cause Motion the NFLPA attorneys admitted that the contract was breached between the Plaintiff and the NFLPA."

Defendants argue that the NFLPA is a private actor and that the Agent Regulations are not governed by the Constitution. This position is incorrect as a matter of law. The NFLPA derives its exclusive authority from federal law, specifically the National Labor Relations Act (NLRA), 29 U.S.C. § 159(a). That statute confers exclusive representation authority on labor organizations for purposes of collective bargaining. When such a union exercises that authority to establish and enforce rules that govern access to a professional labor market (here, player representation in the NFL), its actions are sufficiently entangled with federal power to constitute state action for the purposes of the Fourteenth Amendment.  Moreover, when a union serves as a gatekeeper to a professional license or career path—as is the case here—it assumes a quasi-governmental role. The denial or revocation of a professional license or opportunity to work without due process or equal protection violates clearly established constitutional principles.


*Denied Procedural Due Process*

The Due Process Clause of the Fourteenth Amendment prohibits the deprivation of a liberty or property interest without fair procedure. It is well-established that the right to pursue a lawful profession is a liberty interest protected by the Constitution. See Greene v. McElroy, 360 U.S. 474, 492 (1959); Board of Regents v. Roth, 408 U.S. 564, 572 (1972).  In this case, Plaintiff's right to work as a

certified agent was revoked or denied based on opaque, arbitrary, and non-reviewable decisions made by the NFLPA. No adequate notice, opportunity to be heard, or impartial tribunal was provided—thus violating the minimum procedural safeguards guaranteed by the Fourteenth Amendment.

**2.  What relief are you requesting from the Court? Include any request for damages.**

The Plaintiff is seeking $25,000,000 for wrongful termination and for violating his fourteenth amendment rights (due process). Upon participating in an application process that includes an appeal and hearing process that was corrupt, fraudulent, and unlawful, the Plaintiff was diagnosed as suffering from Induced Depression during the later part of 2016, were the Plaintiff has been receiving monthly treatment since. Furthermore, the induced depression was diagnosed to be caused by the actions of the NFLPA and the Arbitrator where the Plaintiff has since suffered from medical bills, embarrassment, loss of society, and loss of economic advantage and potential financial opportunities as a result of being wrongfully denied certification to be a contract advisor.  The Plaintiff has been prescribed escitalopram by a licensed psychiatrist to treat the symptoms of depression; and the Plaintiff also suffered lost profits from contract negotiations of draftees and other NFL player contract negotiations and collateral contracts (i.e. endorsements).

**3.  State any other information, of which the Court should be aware:**

The statements of fact are as follows:

➢ On May 6, 2020, the US District Court Judge Walton provided an initial ruling in the NFLPA's and Smith's favor.

➢ On March 5, 2021, the US Appeals Court reversed the US District Court Judge Walton ruling and required the US District Court Judge Walton to provide a ruling on the State law claims (i.e. contract).

➢ From March 2021 to February 2023, the US District Court Judge Walton refused to comply with the US Appeals Court ORDER.

4

➢ On February 24, 2023, the US District Court Judge Walton provides a ruling in favor of the NFLPA and Smith after NFLPA attorney admitted that the NFLPA breached the contract between the Plaintiff and the NFLPA.

➢ On March 2023, the Plaintiff appealed the second Judge Walton ruling.

➢ On September 2023, the US Appeal Court ORDERED an Amicus Curiae to be conducted by Georgetown University.

➢ On May 4, 2024, the NFLPA argued that State law did not apply but section 301 of the Labor Management Relations Act (LMRA) applied.

➢ On August 6, 2024, the US Appeals Court ruled that State law did not apply but section 301 of the LMRA applied; and

➢ On August 6, 2025, the Plaintiff filed a complaint against the NFLPA as the actions of Joe Briggs violated the Plaintiff's fourteenth amendment constitutional rights and such action wrongfully terminates the Plaintiff who upon application was a part of the LMRA.


1. In 2014, the Plaintiff completed an "Application for Certification as a National Football League Players Association (NFLPA) Contract Advisor" to become a certified contract advisor for the NFLPA. A clause in the application stated "….In submitting this application, I agree to comply with and be bound by these Regulations (including, but not limited to the maximum fee schedule), which are incorporated herein by reference and any subsequent amendments thereto." The "Application for Certification as an NFLPA Contract Advisor" also stated that "….In consideration for the opportunity to obtain Certification and in consideration of the NFLPA's time and expense incurred in the processing of my application for such certification, I further agree that this Application for the Certification, if one is issued to me, along with the NFLPA Regulations Governing Contract Advisors shall constitute a contract between the NFLPA and myself…." (A copy of the Application for Certification as an NFLPA Contract Advisor is attached as Exhibit 3-Appendix A and incorporated herein by reference).

2. On June 12, 2014, the NFLPA informed the Plaintiff that his "Application for Certification as an NFLPA Contract Advisor", was deemed eligible for certification by the NFLPA, subject to two additional steps: 1.) the Plaintiff must attend the NFLPA Contract Advisor Seminar for new applicants, and 2.) the Plaintiff must receive a satisfactory score on the exam that was to be given at the Seminar ( A copy of the letter denying Plaintiff eligible for Certification upon is attached as Exhibit 4 and incorporated herein by reference ).

3. On July 24th-25th, 2014, the Plaintiff: 1.) attended the Seminar; and 2.) took the exam but, was informed by the NFLPA of not passing the exam. The NFLPA denied the Plaintiff's application for certification to be an NFLPA contract advisor. The NFLPA Letter informed the Plaintiff that at least forty-one (41) correct items was needed to achieve a passing scaled score of 70 (a copy of the 2014 Letter Denying the Plaintiff is attached as Exhibit **2** and incorporated herein by reference).

4. According to the contract between the Plaintiff and the NFLPA, if the Plaintiff failed the exam in 2014, upon submitting a written request to the NFLPA, the Plaintiff would be allowed to retake the exam at the 2015 Seminar. The language made a part of the contract stated " …If you do not pass this examination in 2014, to be eligible for the exam at next administration in 2015, you will be required to submit a written request to the NFLPA to retake the exam…."(a copy of the 2014 Source Document is attached as Exhibit B and incorporated herein by reference).

5. Per the above instructions the Plaintiff submitted a written request to the NFLPA to retake the exam. Upon submitting the written request, the Plaintiff received a response from an NFLPA

representative via email asking the Plaintiff to sign and have notarized an "Acknowledgement" statement. The "Acknowledgement" statement said, "I, Henry Searcy, Jr.... first duly sworn, say that I have read the foregoing questions and have personally answered the same....Further, I agree to be bound by these Regulations in their entirety." Moreover, the "Acknowledgement" was transmitted to the Plaintiff via email and the subject of said email was titled "NFLPA EXAM RE-test" (a copy of the NFLPA EXAM RE-test is attached as Exhibit **A** and Exhibit X and Exhibit Y incorporated herein by reference). On or around June 3, 2015, the Plaintiff received the 2015 Source Document from the NFLPA. Upon the Plaintiff's review of the 2015 Source Document compared to the 2014 Source Document, the Plaintiff noticed that the Test Specifications were the same for the 2014 exam as were for the 2015 exam. The Plaintiff also recognized that the 2015 Source Document and the 2014 Source Document required a Scaled Score of at least 70 in order for one to be certified as a contract advisor. *At all times hereto the Plaintiff believed to be retaking the exam (to include the same scoring methodology) because of the above* (a copy of the 2014 and 2015 Source Documents are attached as Exhibit **B** Exhibit **C, respectively** incorporated herein by reference).

6. On or around September 20, 2015, the Plaintiff was informed by the NFLPA of not passing the exam. The NFLPA denied the Plaintiff's application for certification to be a NFLPA contract advisor in 2015 and informed the Plaintiff that at least forty-seven (47) correct items were needed to achieve a passing scaled score of 70 (A copy of the letter denying the Plaintiff application for certification is attached as Exhibit **7** and incorporated herein by reference). The Plaintiff answered forty-six (46) correct items correct items, thus the Plaintiff did not pass the written exam, again.

7. Upon receiving the results of the 2015 exam and comparing it to the 2014 exam results, the Plaintiff noticed that the 2014 exam raw score/scale score and the 2015 exam raw score/scale was extremely incongruent from 2014 to 2015, and this noticeable incongruency appeared to the Plaintiff as **suspicious**. This was **suspicious** to the Plaintiff because the scaled score language in the 2014 Source Document was the same scaled score language in the 2015 Source Document (see Exhibit **B** Exhibit **C** incorporated herein for reference). Therefore, the Plaintiff filed an appeal on October 21, 2015, contesting the denied certification by the NFLPA. The appeal stated in summary that: 1.) the "exam scoring process" used by the NFLPA was an arbitrary process which redefined "passing" by utilizing an arbitrary scoring methodology, an action that affects those retaking the exam; 2.) the scoring methodology is not made a part of the NFLPA Regulations in order to completely define "passing" (prior to calculating the scaled score) such actions by the NFLPA does not provide test takers enough information to determine if the calculation of the raw scale was developed correctly, an action that affects those retaking the exam; and 3.) the "exam scoring process" used by the NFLPA arbitrarily and inconsistently determines the applicant sample size, such actions by the NFLPA create a moving target for those who are taking the Exam for the second time ( a copy of the appeal letter is attached as Exhibit **1** and incorporated herein by reference). *AT ALL TIMES RELEVANT HERETO, THE PLAINTIFF WAS READY, AND WILLING AND ABLE TO PERFORM UNDER THE TERMS OF THE CONTRACT BETWEEN THE PLAINTIFF AND THE NFLPA.*

8. The Plaintiff could request for relevant information from the NFLPA prior to the appeal hearing. The Plaintiff submitted two requests to the NFLPA for information relevant to the

Plaintiff's appeal hearing. The NFLPA provided a response to all questions related to the

Plaintiff's relevant information request except question #3 from the December 10, 2015,

Information Request. The question #3 asked, "if the percentage that passed the 2015 exam was

less than 70 percent, that the NFLPA provide: 1.) a copy of the resolution passed by the NFLPA

related to this decision; 2.) meeting minutes that show that this change was discussed with the

NFLPA Contract Advisors Community, the NFL Players, and voted on by the NFL Team Player

Representatives; and 3.) provide a copy of the NFLPA Ratified Bylaws. The NFLPA responded

by saying "While the percentage of eligible test takers that passed the exam may be below 70

percent, **there is no way to provide you the documents you requested because they do not**

**exist** (a copy of the NFLPA Ratified Bylaws did not exist is incorporated herein as Exhibit 6 by

reference)**.** Moreover, the Plaintiff continued to prepare for the appeal hearing despite the

disappointing news that the above requested documents (especially the NFLPA ratified bylaws)

did not exist. Thus, the Plaintiff used the responses from questions #6, #7, #9 and #2 in order to

the argument initially provided in the October 21, 2015, appeal letter. The question #6 asked

the NFLPA "Are applicants who fail to obtain a passing score on the Exam allowed to retake the

exam the next year? If so, please provide the section of the NFLPA Contract Advisor

Regulations, any amendments to said regulations or promulgated official policies that govern

those applicants retaking the Exam. The NFLPA responded to question #6 by saying, "Yes. This

information can be found in Section 2(A) of the NFLPA Regulations Governing Certified

Advisors ("Regulations"). The question #7 asked the NFLPA "Are there any regulations,

amendments, or promulgated policies that specifically clarify "pass a written exam within

Section 2(A) of the NFLPA regulations? If so, please provide the section of the NFLPA contract

advisor regulations, any amendments to said regulations or any promulgated official

policies/memorandum that clarify "passing a written exam". The NFLPA in response to question #7 said, "Yes, the state policy of the NFLPA is included in the Source Material previously provided to you for your reference.  There, on the first page in the collection of documents, the NFLPA states that "applicants must receive a scaled score of at least 70 on the examination to become certified by the NFLPA.  If you do not receive the required score to pass the exam, you will be denied certification. Section 3(A)(18) of the Regulations requires compliance with all of the state policies of the NFLPA".  The question #9 asked the NFLPA, "Are there any regulations, amendments, or policies that promulgate the methodology/formula used in the scoring of the Exam?  If so, please provide a copy of the regulations, amendments, or policies that promulgate the methodology/formula used in the scoring of the 2014 and 2015 Exam.  The NFLPA's response was "No, there are no regulations, amendments or written policies of the NFLPA that promulgate the methodology used in scoring the examination other than those referenced in the Source Materials previously provided to you for your reference".  The question #2 asked the NFLPA "For each NFLPA contract advisor exam given for the years 2010, 2011, 2012, 2013, 2014 provide the following:

1.  the total number that took the exam for each year;

2.  the total number that failed the exam for each year;

3.  the total number that passed the exam for each year;

4.  the scoring methodology used to determine if one passed or failed the Exam for each year; and

5.  the changes to the scoring methodology made from year to year and the basis/rationale for the change.

The NFLPA provided the Plaintiff a response to sub-questions 1. – 4. above. The NFLPA's

response was indicated in a table titled NFLPA 2010-2015 History of Pass Rate Summary

Table. The scoring methodology changes were as follows:

| Year | Determination of Cut Score Method |
|------|-----------------------------------|
| 2010 | Standard Setting Study |
| 2012 | Standard Setting Study |
| 2013 | Equating |
| 2014 | Equating |
| 2015 | Standard Setting Study |

(a copy of the NFLPA 2010-2015 History of Pass Rates Summary Table is attached as Exhibit **5**

and incorporated herein by reference) The information provided within the abovementioned table

would satisfy the NFLPA's response to question 1. – 4. and be used for by the Plaintiff at the

appeal hearing. That said, the Plaintiff ask one last question prior to the appeal hearing, the

Plaintiff asked if "Equating" and "Standard Setting Study" are two different methods for

determining the cut score. The NFLPA's response was "Yes, these terms do refer generally to a

method of determining the cut score". (a copy of the Discovery Questions by Plaintiff and

NFLPA responses are attached as Exhibit 8 and Exhibit 9 and incorporated herein by reference)

However, the NFLPA did not provide a response to the Plaintiff's sub-question #5 as this

question asked for the rationale for the scoring methodology changes from 2010, 2012, 2013,

2014, and 2015 to no avail. To that end, the Plaintiff received 14 out 18 responses from the

NFLPA prior to the Plaintiff's appeal hearing. *AT ALL TIMES HEREIN THE PLAINTIFF*

*RELIED ON THE INFORMATION PROVIDED BY THE NFLPA AS SUCH INFORMATION*

*IDENTIFIED THAT SECTION 2(A) OF THE NFLPA REGULATION WAS PROMULGATED*

*WITHIN THE SOURCE DOCUMENTS; AND AT ALL TIMES HEREIN THE PLAINTIFF*

*RELIED ON THE INFORMATION PROVIDED BY THE NFLPA THAT THE SCORING*

*METHODOLOGY WAS CHANGED FROM "EQUATING" ON THE 2014 EXAM TO THE*

*"STANDARD SETTING STUDY" ON THE 2015 EXAM.*

9. The appeal hearing was scheduled by the NFLPA, as an NFLPA representative reached out to the Plaintiff to request the dates of availability within the month of February. Upon identifying such dates to the NFLPA representative, on around January 9, 2016, the NFLPA representative informed the Plaintiff via email that the appeal hearing was scheduled for February 19, 2016, at 10:00 AM EST at 1133 20th Street NW Washington, DC. In the same email the Plaintiff was informed that the Arbitrator Jerry Ross would be the arbitrator at the February 19, 2016, appeal hearing (a copy of the NFLPA appeal hearing scheduling email is attached as Exhibit **D** and incorporated herein by reference). On February 17, 2016, the Plaintiff was carbon copied on a direct email sent by the NFLPA representative Joe Briggs (NFLPA representative) to Arbitrator Jerry Ross (Arbitrator). The direct email to the Arbitrator from the NFLPA representative informed the Arbitrator of the "files" that would be introduced at the appeal hearing on February 19, 2016. The direct email to the Arbitrator from the NFLPA representative also informed the Plaintiff to submit the files to the Arbitrator's attention via email prior to the appeal hearing (a copy of the NFLPA rep email is attached as Exhibit **E** and incorporated herein by reference). Per the NFLPA representative's instructions, the Plaintiff submitted all the exhibits that supported the Plaintiffs testimony directly to the Arbitrator (a copy of Plaintiff email directly to the Arbitrator is attached as Exhibit **F** and incorporated herein by reference).

10.  The appeal hearing began sometime after 10 AM est. with an oath and opening testimonies.  The Plaintiff's appeal hearing unlike most arbitration hearings, began by the testimony of the defending party the NFLPA through its representative Joe Briggs.  The NFLPA representative NFLPA representative testified that the Plaintiff's certification should be denied according to Section 3(A)(15) of the NFLPA regulations. The NFLPA representative provided a detailed argument showing exhibits and documents etc. all related to Section 3(A)(15) of the NFLPA regulation against the Plaintiff.  Now it was the Plaintiff's turn to testify, where first the Plaintiff informed the NFLPA representative that the argument provided by the NFLPA representative was not relevant to the Plaintiff as Section 3(A)(15) related to contract advisors - the Plaintiff was an Applicant and not party to the Collective Bargaining Agreement.  Accordingly the Plaintiff testified and provided supporting evidence as to: 1.) why the Plaintiff passed the exam; 2.) the reasons for the appeal made a part of the October 21, 2015, appeal letter. 2a.) the "exam scoring process" used by the NFLPA was an arbitrary process which redefined "passing" by utilizing an arbitrary scoring methodology, an action that affects those retaking the exam; 2b.) the scoring methodology is not made a part of the NFLPA Regulations in order to completely define "passing" (prior to calculating the scaled score) such actions by the NFLPA does not provide test takers enough information to determine if the calculation of the raw scale was developed correctly, an action that affects those retaking the exam; 2c.) the "exam scoring process" used by the NFLPA arbitrarily and inconsistently determines the applicant sample size, such actions by the NFLPA create a moving target for those who are taking the Exam for the second time; 3.) the Plaintiff testified that the NFLPA's actions violated the NFLPA regulations; and the Plaintiff explained the importance of amending the regulations through the Board of Representatives.

   1.) *Passing the Exam* the Plaintiff testified that the "Application for Certification as a

Contract Advisor" should have not been denied because in a letter dated September 8, 2014, the NFLPA informed the Plaintiff that he did not pass the 2014 NFLPA Contract Advisor exam. The letter further stated that the Plaintiff needed to answer at least 41 correct items to receive a scaled score of 70 (Exhibit 1 incorporated herein by reference). The Plaintiff was then offered the opportunity to re-take the exam according to the specific instruction made in the 2014 Source Document, p.2, where test takers are told to "submit a written request to the NFLPA to re-take the exam." The Plaintiff proceeded, in good faith, with the understanding that a score of at least 41 was required to obtain a scaled score of 70 for re-taking in 2015. Additionally, the Plaintiff proceeded, in good faith, with the understanding that the Plaintiff could re-take the Exam within the same methodological testing framework. Based on the aforementioned factors and the written advice of the NFLPA, in good faith, the Plaintiff retook the exam and scored a 46 on the 2015 re-take Exam. Therefore, the Plaintiff exceeded the minimum threshold requirement of scoring over a 41 as instructed by the NFLPA.

2.) the Plaintiff supported the initial grievant statement provided in the October 21, 2015, appeal letter by revealing to the Arbitrator the "NFLPA 2010-2015 History of Pass Rates Summary Table" previously stated in this complaint that revealed the scoring methodology was changed from the "Equating Cut Score Method" on the 2014 Contract Advisor Exam to the "Standard Setting Study Cut Score Method" on the 2015 Contract Advisor Exam (Exhibit 5 incorporated herein by reference). 2a.) The Plaintiff testified that the "exam scoring process" used by the NFLPA was an arbitrary process which redefined "passing" by utilizing an arbitrary scoring methodology, an action that affects

14

those retaking the exam because the scoring methodology was change.  2b.) The Plaintiff testified that the NFLPA scoring methodology is not made a part of the NFLPA regulations because it is arbitrarily and capriciously being changed in order to completely redefine "passing" to not provide test takers enough information to determine if the calculation of the raw scale was developed correctly. This action is intended to affect those retaking the exam. 2c.) The Plaintiff testified that by changing the scoring methodology the "exam scoring process" used by the NFLPA create a moving target for those taking the exam for the second time.

*AT ALL TIMES HEREIN, THE PLAINTIFF CLEARLY UNDERSTOOD THAT AT THE HEARING THE GRIEVANT HAD THE BURDEN OF PROVING, BY A PREPONDERANCE OF THE EVIDENCE PER SECTION 5(E) OF THE NFLPA REGULATIONS.*

2.) The Plaintiff also testified that changing the scoring methodology without amending the NFLPA regulations was a violation of the NFLPA regulations or Section 1(c).  The Plaintiff recommended to the NFLPA representative that the amendments must be made a part of the 2015 Source Document if approved by the Board of Representative.  The Plaintiff further suggested that such a critical amendment should have been approved by the Board of Representatives, and made available to current contract advisors and Applicants seeking to become NFLPA certified contract advisors. The amended action should have been done similar to the "TIME LIMIT TO DISPUTE A FAILING GRADE ON THE CONTRACT ADVISOR TEST" amendment (Exhibit 9 and Exhibit S incorporated herein by reference), an amendment that was approved by the Board of

15

Representatives and made available to contract advisors and perspective contract advisors within the Source Document.

To that end the appeal hearing ended, and the Plaintiff felt confident that the evidence presented was more than enough to receive a favorable award.

The Plaintiff typed out the summary of his argument and read it at the hearing as testimony in the form of an opening statement to provide proof of the context of his argument (the Opening Statement is Incorporated herein referenced as Exhibit T) Furthermore, the Plaintiff throughout the appeal hearing the Plaintiff's only deviated for the argument summary in 3.) above.

*AT ALL TIME HEREIN THE PLAINTIFF BELIEVED THAT THE APPEAL HEARING WAS BEING CONDUCTED BY THE AMERICAN ARBITRATION ASSOCIATION (AAA) ACCORDING TO THE VOLUNTARY LABOR ARBITRATOR RULES AS REQUIRED BY SECTION 5(E) OF THE NFLPA REGULATIONS.*

**On the contrary, the NFLPA representative did not see anything wrong with their organization changing the scoring methodology.**

11. In the month of April 2016, the Plaintiff received a copy of the Arbitrator's Opinion and Award Document (OAD) denying the Plaintiff's appeal.  The Plaintiff, upon reviewing the Arbitrator's OAD saw that: a.) the OAD overtly violated the NFLPA regulations; b.) the Arbitrator's OAD basis used for denial was contrary to the facts; c.) the Arbitrator's OAD

identifies incongruences in the testified statements of the NFLPA representative and the

information provided to the Plaintiff by the NFLPA; d.) the Arbitrator's OAD identified third

party participation to the contract between the Plaintiff and the NFLPA (a copy of the mail stamp

of the Arbitrator's late OAD is attached as Exhibit Q and incorporated herein by reference).

a. The overt violations of the NFLPA regulations as identified within the Arbitrator's OAD

were: 1.) The Arbitrator violated Section 5(E) of the NFLPA regulations by not rendering

a decision at the close of the hearing or within thirty (30) days after the hearing; 2.) The

Arbitrator's OAD violated Section 5(H) of the NFLPA regulations by not obtaining

permission in writing by the Plaintiff and the NFLPA to extend the timeframe to provide

the written decision related to the Plaintiff's appeal hearing; **The Arbitrator's OAD was

dated April 3, 2016, and received by the Plaintiff well over 30 days after the

February 19, 2016, hearing date**; and 3.) The Arbitrator's OAD wrongly references

Section 3(A)(15) as the regulatory reference for denial of the Plaintiff's application for

certification.  The Section 3(A)(15) is relevant to contract advisors - the Plaintiff was an

Applicant and not a party to the NFL Collective Bargaining Agreement (CBA); and 4.)

The Arbitrator's OAD only reviews the Plaintiff's appeal according to the Section 2(D)

which states that "The standard for the Arbitrator on an appeal of a denial of an

Application for Certification shall be whether there is reasonable basis in the

circumstances of the case under review for the NFLPA's decision to deny the

Application" and fails to consider the Plaintiff's complaint according to Section 5(E).  As

Section 5(E), requires the grievant shall have the burden of proving, by a preponderance

of the evidence, the allegations of the grievance. Accordingly, the Plaintiff proved the

allegations within the

October 21, 2015, appeal letter by providing proof that the NFLPA changed the scoring methodology.  Thus, the allegation in the October 21, 2015, appeal letter stating that the NFLPA redefines "passing", **was because the NFLPA changed the scoring methodology**.  Accordingly, the allegation in the October 21, 2015, appeal letter stating that the NFLPA creates as moving target for those taking the exam for the second time, **was because the NFLPA changed the scoring methodology**.  Subsequently, the allegation in the October 21, 2015, appeal letter stating that the exam uses an arbitrary scoring methodology was because the NFLPA changed the scoring methodology.  Lastly, the allegation in the October 21, 2015, appeal letter stating that the NFLPA arbitrarily determines the sample size for passing the exam, **was because the NFLPA changed the scoring methodology.** 5.) The context in which the Arbitrator's OAD uses the Plaintiff's statement "I scored 46 correct answers out of 60 questions, 76.66 percent…is contrary to the context in which it was used at the appeal hearing and contrary to the Plaintiff's argument summary Opening Statement (Exhibit T incorporated herein referenced) Accordingly, that statement was used during the appeal hearing in the context of the NFLPA changing the scoring methodology. Given that the wrong scoring model was used on the Plaintiff's exam it was proposed as another alternative to satisfy NFLPA requirement "pass a written exam" given the above mentioned situation. Thus, the Plaintiff promulgated this statement from the

October 21, 2015, appeal letter to serve as a solution. According to Section 5(E) all hearings are transcribed, however as of today the Plaintiff has not inspected nor signed off on the transcription as it relates to the context of the words used by the Plaintiff during the February 19, 2016, appeal hearing.

18

THE ARBITRATOR'S OAD OVERTLY OMITTED THE CONTEXT TO WHICH THE
PLAINTIFF COMMUNICATED THE NFLPA's CHANGING THE SCORING
METHODOLOGY AS THE PLAINTIFF TESTIFIED ACCORDING TO SECTION 5(E).

b.  The Arbitrator's basis used within the OAD to deny the Plaintiff's application for

certification was contrary to the facts provided to the Arbitrator through the

preponderance of the evidence and the relevant information provided to the Plaintiff by

the NFLPA (Exhibit R incorporated herein by reference): 1.) **The Arbitrator's OAD**

**provided a basis for the Plaintiff's denial contrary to fact by stating that the word**

**"retake" was not mentioned within the NFLPA Source Document.**  On page 5 of the

Arbitrator's OAD the Arbitrator states, "Therefore, the Regulations, such as they are,

cannot be enforced. Nor can the Source Documents which do not mention "retakers" and

the term needs to be defined".  Additionally, on page 5 of the Arbitrator's OAD, the

Arbitrator admits to reviewing the Source Documents and not seeing within said

documents the word "retake", such oversight has served as the basis within the

Arbitrator's OAD for the denial of the Plaintiff's appeal.  However, on the contrary the

word "retake" can be found on page 2 of the 2014 Source Document (see Exhibit B

incorporated herein referenced).  The Plaintiff also submitted proof that the Source

Document mentions the word "retake" via a February 18, 2016, direct email to the

Arbitrator (see Exhibit F incorporated herein referenced. 2.) **The Arbitrator's OAD**

**provided a basis for the Plaintiff's denial contrary to fact by stating on Page 6**

"…The use of the term "retakers" in an NFLPA letter to applicants, dated June 12, 2014,

19

prior to the 2014 exam references an opportunity to retake the exam in 2015 if the applicant does not pass the 2014 exam, references an opportunity to retake the exam to 2015 if the applicant does not pass the 2014 exam. Such a provision does not establish that a "retaker" will take the same, or similar, exam or be held to the same standard as was used in the prior year." The discovery question #7 asked the NFLPA "Are there any regulations, amendments, or promulgate policies that specifically clarify "pass a written exam" as it relates to Section 2(A) of the NFLPA Contract Advisor Regulations? If so, please provide the section of the NFLPA Contract Advisor Regulation, any amendments to said regulations or any promulgated official policies/memorandum that clarify "passing a written exam" methodology/formula used in the scoring of the exam? If so, please provide a copy of the regulations, amendments, or policies that promulgate the methodology/formula used in the scoring of the 2014 and 2015 Exam. The NFLPA response was "Yes, the stated policy of the NFLPA is included in the Source Materials previously provided to you for your reference. There, on the first page in the collection of documents, the NFLPA states that "Applicants must receive a scaled score of at least 70 on the examination to become certified by the NFLPA. If you do not receive the required score to pass the exam, you will be denied certification. Section 3(A)(18) of the Regulations requires compliance with all of the stated policies of the NFLPA." Accordingly, Page 2 of the 2014 Source Document and Page 1-2 of the 2015 Source Document has the same exact language as they both state "Applicants must receive a scaled score of at least 70 on the examination to become certified by the NFLPA. If you do not receive the required score to pass the exam, you will be denied certification. "The next opportunity to **retake** the exam will be at the seminar for new applicants in the

summer of 2015.  If you do not pass this examination in 2014, to be eligible for the exam

at next administration in 2015, you will be required to submit a written request to the

NFLPA to **retake** the exam.  You will not be required to pay another fee if the 2014

examination was your first attempt at passing the examination for certification.  Please

note the application fee can only be waived once." Therefore, given that the same

language was made a part of both 2014 and 2015 Source Documents the same and similar

testing expectations was expected (see Exhibit B page 2 and Exhibit C page 1-2

incorporated herein referenced).   3.) **The Arbitrator provided a basis for the**

**Plaintiff's denial contrary to the relevant information submitted to the Plaintiff by**

**the NFLPA when on Page 7 the Arbitrator's OAD says that the word "retake" is**

**overridden by the regulations because it was not mentioned in the NFLPA Source**

**Document**.  The discovery question #7 asked the NFLPA "Are there any regulations,

amendments, or promulgate policies that specifically clarify "pass a written exam" as it

relates to Section 2(A) of the NFLPA Contract Advisor Regulations?  If so, please

provide the section of the NFLPA Contract Advisor Regulation, any amendments to said

regulations or any promulgated official policies/memorandum that clarify "passing a

written exam" methodology/formula used in the scoring of the exam? If so, please

provide a copy of the regulations, amendments, or policies that promulgate the

methodology/formula used in the scoring of the 2014 and 2015 Exam.  The NFLPA's

response was "Yes, the stated policy of the NFLPA is included in the Source Materials

previously provided to you for your reference. There, on the first page in the collection of

documents, the NFLPA states that "Applicants must receive a scaled score of at least 70

on the examination to become certified by the NFLPA.  If you do not receive the required

score to pass the exam, you will be denied certification. Section 3(A)(18) of the

Regulations requires compliance with all of the stated policies of the NFLPA."

Given that "passing a written examination" is within Section 2(A) of the NFLPA

Regulations and according to the NFLPA's response to discovery question # 7 this

regulatory reference is promulgated within the Source Document. The next sentence in

Section 2(A) after "passing a written examination" is "In the instance that a new

applicant fails the written examination on two successive occasion, the applicant shall be

barred from applying for Certification and taking the written examination again for no

less that five (5) years." Moreover, this sentence is also in Section 2(A) of the NFLPA

Regulations where "two successive occasion" made a part of Section 2(A) is promulgated

into the Source Document as "retake". Therefore, retake is not superseded by the

regulations in this instance because if it were then "a scaled score of 70" would also be

superseded by the regulation because they both are a part of Section 2(A) in the NFLPA

Regulation and promulgated within the Source Documents.  3.) **The Arbitrator's OAD**

**misrepresented the Plaintiff's statements throughout the OAD and failed to discuss**

**the Plaintiff's primary points within the hearing.**  On page 6 the Arbitrator's OAD

states that "....Mr. Searcy did not understand the scaled score system in asserting that he

had scored 76.66 percent of the exam questions...." The Plaintiff's knowledge of the

different scoring methodologies is a moot point however, what was important was the

fact that the scoring methodologies arbitrarily changed without an amendment to the

NFLPA regulations; and the Arbitrator's OAD reveals this fact as the OAD recognizes

the scoring methodology change from Equating to Standard Setting Study, and to the

Angoff method according to the testimony by the NFL representative.  Moreover, the

Arbitrator's OAD supports the Plaintiff's October 21, 2015, appeal letter as the scoring methodology was arbitrarily change (A copy of the Plaintiff's Testimony is attached as Exhibit **I** and incorporated herein by reference).

*THE STATEMENTS BY THE ARBITRATOR THAT THE WORD "RETAKE" WAS NOT IN THE 2014 SOURCE DOCUMENT MISREPRESENTS OF A MATERIAL FACT.*

*THE STATEMENTS BY THE ARBITRATOR THAT THE WORD "RETAKE" WAS OVERRIDDEN BY THE REGULATIONS IS A FALSE REPRESENTATION OF A MATERIAL FACT.*

c.  The Arbitrator's OAD revealed incongruence's in the testified statements of the NFLPA representative compared to the information provided the Plaintiff by the NFLPA (Exhibit 8). The incongruent statements were: 1.) On page 4 of the Arbitrator's OAD the NFLPA representative testified that "In 2015 a new substance abuse policy was considered in the exam and not used in 2014." This statement contradicts the information provided to the Plaintiff by the NFLPA. The information provided to the Plaintiff within the Test Specification Table inside the 2014 Source Documents on page 3 located at <u>III NFL Policies and Procedures (A)(1) Substance Abuse Polices</u> **indicate that the substance abuse policy was a part of the 2014 NFLPA contract advisor exam**. This statement is also incongruent to the NFLPA's response to discovery question #5 as the Plaintiff asked the NFLPA "Did the 2014 Exam and 2015 Exam cover the same testing information? The NFLPA's response was "Yes". (Exhibit 8 is attached and incorporated herein by

reference) (Exhibit 8)   2.) The Arbitrator's OAD offers additional testimony of the

NFLPA representative that was contrary to the information provided to the Plaintiff by

the NFLPA.  On page 4 of the Arbitrator's OAD the NFLPA representative  when

commenting about the 2015 exam mentions" The Angoff Cut-Score was used" while the

NFLPA provided information to the Plaintiff that stated the Standard Setting Study cut-

score was used for the 2015 exam (Exhibit 5)  . 3.) The Arbitrator's OAD uses the

Plaintiff's response to the NFLPA representative as mentioned in b.3.) above but

conveniently did not mention the discussion that the NFLPA representative provided

about the NFLPA regulation approval process and the parties involved including

executive committee.


*THE ARBITRATOR'S OAD MISREPRESENTED THE ACCURACY OF THE FACTS AND*

*THE ARBITRATOR'S OAD MISREPRESENTED THE CONTEXT OF THE PLAINTIFF'S*

*TESTIMONY. THE ARBITRATOR'S OAD MISREPRESENTED THE DISCUSSIONS OF*

*THE NFLPA REPRESENTATIVE ABOUT REGULATION AMENDMENTS.*


d.  The Arbitrator's OAD named third party interference to the contract between the Plaintiff

and the NFLPA where on page 3 it states, "It observes that a professional testing service

ProMetric LLC, helped determine the standard for minimum competence.  Ten subject

matter experts were used to develop the 60 multiple choice questions which comprised

the exam." The relevant documents provided by the NFLPA to the Plaintiff found that the

NFLPA regulations Section 2(A) related to "pass a written exam" was promulgated in the

Source Document (Exhibit 8 question #7 incorporated herein as referenced).  Upon the

Plaintiff's review of the 2014 Source Document and the 2015 Source Document the

Plaintiff did not see any amendments to the NFLPA regulations according to

Section 1(c ) discerning changing the scoring methodology which is related to determine

minimum competence. Furthermore, the 2014 Source Documents has three amendments,

the amendments are: 1.) Time Limit to Dispute a Failing Grade on the Contract Advisor

Test; 2.) Amend the Application for Certification as a Contract Advisor to Require

Applicants to List Liens 3.) Minimum accreditation for a College or university (Exhibit S

incorporated herein by reference).  The 2015 Source Document has three amendments

they are: 1.) Increase in Discipline; 2.) Submission of Other Agreements under Section

2(A)(6).    3.) Referring Player-Clients to Outside Counsel on CBA Issues plus the above

mentioned 1.), 2.), and 3.).  That said, neither the 2014 Source Document nor the 2015

Source Document mentions a change to the scoring methodology by ProMetric, LLC (a

copy of the Arbitrator's OAD is attached as Exhibit O and incorporated herein by

reference)


*IN ORDER TO BENEFIT ITS BUSINESS, PROMETRIC LLC CHANGED THE SCORING*

*METHODOLOGY ON THE 2015 CONTRACT ADVISOR EXAM WITHOUT RECEIVING*

*APPROVAL FROM THE NFL BOARD OF REPRESENTATIVES TO AMEND THE NFLPA*

*REGULATIONS ACCORDING TO SECTION 1(C) OF THE NFLPA REGULATIONS TO*

*BENEFIT ITS OWN BUSINESS.  SUCH ACTIONS BREACHED THE CONTRACT BETWEEN*

*THE PLAINTIFF AND THE NFLPA.*


12.  Upon the Plaintiff's review of the experience of trying to become an NFLPA certified

contract advisor, the Plaintiff has identified through the participation in the appeal process that three business entities contributed to violating the law and the NFLPA regulations in breach of the contract between the Plaintiff and the NFLPA. The Plaintiff's participation in the NFLPA appeal process made known that all three entities were contractors for the NFLPA. Accordingly, the Plaintiff wanted to write someone within the organization that had the authority to sign or delegate, and execute a contract on behalf of the NFLPA – someone who is responsible for the day-to-day affairs of the NFLPA. Similarly, the Plaintiff wanted to write someone within the organization that would have had the authority to sign or delegate, in order to execute a contract on behalf of ProMetric. Thus, the appropriate person of authority for ProMetric was Michael P. Sawicki, Senior Vice President and the appropriate person of authority for the NFLPA was DeMaurice F. Smith, Executive Director and/or his delegate Mark Levin, Director of Salary Cap and Agent Administration for the NFLPA. Insomuch as the NFLPA said that the ratified bylaws of its organization do not exist, on April 25, 2016, the Plaintiff wrote a letter to the NFLPA Mark Levin, Director of Salary Cap and Agent Administration of the NFLPA and blind carbon copied DeMaurice F. Smith, Executive Director, requesting a default ruling as relief for having to participate in an unfair appeal process. The letter was written because the NFLPA regulations do not comment on the repercussions of an Arbitrator violating the NFLPA regulations. The letter also mentioned that the regulations are silent as it relates to the repercussions if the NFLPA violated its regulations within the appeal and hearing process (a copy of the Mark Levin Default Ruling letter is attached as Exhibit M and incorporated herein by reference). After waiting several weeks for a response from Mark Levin regarding the April 25, 2016, default ruling letter, in the month of June, the Plaintiff contacted the American Arbitration Association (AAA). The Plaintiff spoke to an AAA representative who asked the for the case number relevant to the

arbitration hearing.  Upon providing the case number made a part of the Arbitrator's OAD,

NFLPA-DC-O5, the AAA representative said that the case number made a part of the

Arbitrator's OAD was not an AAA case number (a copy of the AAA email is attached as Exhibit

and incorporated herein by reference).  According to Section 5(E) of the NFLPA regulations, the

Arbitrator is to conduct the hearing according to the "Voluntary Labor Union Rules (VLUR)".

The Plaintiff was told by the AAA Representative that the case number provided was not an

AAA case numbers.  The AAA representative further stated that all AAA case numbers were

twelve (12) twelve-digit numbers.  Moreover, the AAA representative also informed the Plaintiff

that the VLAR were not made a part of the AAA active rules or archived rules.  An AAA

representative said that an organization could pay for the use of the AAA rules.  The Plaintiff

was disturbed to hear the news.  Such news meant to the Plaintiff, that the February 19, 2016,

appeal hearing was not conducted according to the VLAR.  Accordingly, the Plaintiff was further

disturbed because according to Section 5(E) of the NFLPA regulations, the hearing must be

transcribed.  The Plaintiff relied on the fact that the hearing was governed by the AAA as the

AAA rules require the Arbitrators to have the parties inspection of the transcription before it

becomes an official record *(a copy of the AAA not a Case # email is attached as Exhibit H and*

*incorporated herein for reference)*.  Accordingly, throughout the Arbitrator's OAD, the

Plaintiff's words were taken out of context.  Moreover, the Plaintiff has not reviewed/inspected

or signed off on the transcription from the February 19, 2016, appeal hearing.  The Plaintiff

concluded from the information provided by the AAA that the Arbitrator did not have any

oversight other than from the organization that was paying his $5,028.60 invoice, the NFLPA

(Arbitrator Invoice Exhibit O incorporate herein for reference )..

*AT ALL TIMES HEREIN, PLAINTIFF RELIED UPON THE GOVERNING OF THE AAA*

*BEING A PART OF THE HEARING PROCESS THUS PROVIDING THE CONFIDENCE THAT ONE WOOULD RECEIVE A FAIR ARBITRATION.*

13.  The NFLPA had a duty of care to the Plaintiff.  That duty of care required: 1.) the NFLPA to amend the NFLPA Regulations upon changing the scoring methodology from the scoring methodology used in the 2014 exam to the scoring methodology used in the 2015 exam without amending the NFLPA regulations while the scoring methodology in the 2014 Source Document is the same scoring methodology in the 2015 Source Document; 2.) the NFLPA to transmit accurate information (including organizational information ( e.g. the NFLPA ratified bylaws) from the NFLPA to the Plaintiff during the request for relevant documents during the appeal and hearing process; 3.) the performance of the contract between the Plaintiff and the NFLPA to allow the Plaintiff the opportunity to retake the exam per the contract with the same scoring methodology; 4.) for the oversight and coordination of an appeal hearing in compliance with the VLAR of the AAA; 5.) for the oversight of their hired contractor, Prometric, to not interfere with the existing contract of the Plaintiff and other Applicants or contract advisors; and  6.) for the oversight of the contracted NFLPA Arbitrator, to not violate the NFLPA regulations and the Federal Arbitration Act.

14.  The failure of the NFLPA to provide a duty of care to the Plaintiff, deprived the Plaintiff of the opportunity to obtain profits as a certified contract advisor for college players entering the NFL Draft.  The NFLPA regulations, identifies expenses as $1,500, if you are representing ten players or less and $2,000 if you represent more than 10 players, plus insurance.  However, the reality of the Plaintiff's lost profit became the Plaintiff's nightmare upon the review of the 2015

Source Document in the section titled 2014 Final Draftee Signals (Final Draftee Signals). The Final Draftee Signals is compiled data of the income received by players drafted in rounds 1-7 and the future/proforma amounts a rookie player will receive over four years upon being drafted. The Final Draftee Signal identified the signing bonus made available for all rookie athletes and the projected base salary for four years upon being drafted and roster bonuses. For example, according to Final Draftee Signal Jadeveon Clowney, was the first overall pick in the 2014 NFL Draft, was represented by NFLPA certified contract advisor Bus Cook. As a NFLPA certified contract advisor, Bus Cook, would receive two (2) percent from Jadeveon Clowney's signing bonus, base salary, and roster bonus thus receive approximately $472,111 ($14,518,544 + $420,000 base salary yr 2014 + $510,000 bs 2015 + $600,000 bs 2016 + $690,000 bs 2017) multiplied by .02) is the amount Bus Cook would make by being a the certified contract advisor of Jadeveon Clowney - Bus Cook represented four athletes in the 2014 NFL Draft. However, according to the Final Draftee Signal Jadeveon Clowney will receive $12,306,000 in signing bonus as fifth year option. This means Bus Cook will make another $246,120 ($12,306,000 x .o2). This calculation does not consider NFL Free Agents needing contract negotiations that are not limited to the rookie cap and fifth year roster bonuses. However, the above mentioned figures within the Final Draftee Signal made a part of the NFLPA's 2014 or the 2015 Source Document can be used to calculate the lost profits of Plaintiff since being deprived of the opportunity to obtain profits as a NFLPA certified contract advisor (Exhibit B & Exhibit C).

In addition to the aforementioned lost profits damages, the Plaintiff was a former participant in the 1994 Rose Bowl who instead of pursuing a career in the National Football League has been a community advocate against domestic violence and an advocate for affordable housing for very-low to moderate income persons, the elderly and persons with disabilities. The Plaintiff was

mentored by former Oakland Raiders Mr. Otis Sistrunk and the late Michael Wynn on the legacy

of the NFLPA and the benefits of a college education.  They both played with the late Gene

Upshaw and were associated with an NFLPA organization steep in rich historical traditions an

organization that was dedicated to compelling social purpose.  The Plaintiff's desire to be a

member of the NFLPA was more than an opportunity to negotiate contracts for NFL Players, but

an opportunity to share in that legacy created by the Plaintiff's mentors.

*Medical*

Upon participating in an application process that includes an appeal and hearing process that was

corrupt, fraudulent, and unlawful, the Plaintiff was diagnosed as suffering from Induced

Depression during the later part of 2016, were the Plaintiff has been receiving monthly treatment

since. Furthermore, the induced depression was diagnosed to be caused by the actions of the

NFLPA and the Arbitrator where the Plaintiff has since suffered from medical bills,

embarrassment, loss of society, and loss of economic advantage and potential financial

opportunities as a result of being wrongfully denied certification to be a contract advisor.  The

Plaintiff has been prescribed escitalopram by a licensed psychiatrist to treat the symptoms of

depression.

*Loss Profits*

Furthermore, the Defendant overtly wrongfully terminated the Plaintiff by not providing an

arbitration hearing "….in accordance with the Voluntary Labor Arbitration Rules of the

American Arbitration Association" a violation of Section 5 (E) (Exhibit AAA). As it relates to

loss profits associated to the above-mentioned breach of contract, the case Edmond J. Flynn Co.

v. LaVay, 431 A.2d 543, 549- 50(D.C. 1981) says that a plaintiff needs to prove damages only

with reasonable certainty. The above-mentioned case further states that an award may not be

based on speculation or guesswork, it may be a just and reasonable estimate based on relevant data; probable and inferential consideration as well as direct and positive proof may provide the basis for an award. That said, in order to determine loss profits, the Plaintiff used the 2013 and 2014 Final Draftee Signals as relevant data that was provided by the NFLPA within the 2014 and 2015 Source Documents (Exhibit B and Exhibit C), the NFLPA Regulations Governing Contract Advisors (NFLPA Regulations), Bank Discount History, and the Plaintiff's Complaint. The 2013 and 2014 Final Draftee Signals identifies the initial and Proforma compensation of drafted NFL players signing bonus and annual salary. The proforma draft compensation of the drafted NFL players was used to calculate loss profits. The 2013 and 2014 Final Draftee Signals also provides the compensation received by college draft picks for Round 1 through Round 7 of the 2013 NFL Draft and the 2014 NFL Draft. The paragraph 14 of Complaint identifies the 2014 Final Draftee Signals section in reference with NFLPA contract advisor Bus Cook's compensation related to one of his draft choices Jadeveon Clowney from his 2014 Draft Class.  The paragraph 8 of the Complaint, identifies that the scoring methodology was changed on the 2015 NFLPA contract advisor exam, therefore, 1.) the 2014 NFL Draft baseline year used for the Plaintiff's loss profits using the 2013 and 2014 Final Draftee Signals as relevant data associated with the compensation of the NFLPA contract advisor Bus Cook in the 2014 Final Draftee Signals within the 2015 Source Material Document; 2.) The Plaintiff calculated the present value of the cashflows of Bus Cook's 2014 Draftees which were: Jadeveon Clowney, Eric Ebron, Jordan Matheus, Cyaus Kouandjo, Tre Mason, Gabe Jackson Tre Boston, and Jabari Price. The present value calculation used a discount rate of 2.45 percent, the highest discount rate used by banks within the past 10 years (Exhibit Discount Rate); 3.) The Plaintiff used the 2013 Final Draftee Signals within the 2014 Source Material Document

to determine a growth rate of 40 percent related to Bus Cook's agent compensation related to his 2013 Draftees in comparison with his 2014 Draftees (Exhibit B)(Exhibit C)(Exhibit Loss Profits). The 2013 Draftees of Bus Cook were Christiane Michael, Jamie Collins, Johnathon Banks, Stansly Maponga, Alan Bonner, Michael Williams (Exhibit Loss Profit); 4.) Upon adding up the present value of the cashflow of Bus Cook's 2014 Draftees the sum was multiplied by two percent according to section 4(B)(i) of the NFLPA Regulations. The paragraph 14 of the Complaint states that the NFLPA Regulations identifies expenses of $1,500, if a NFLPA contract advisor represents ten players or less and $2,000 if a NFLPA contract advisor represents more than 10 players, plus insurance. Accordingly, section 4 of the NFLPA Regulations allow for NFLPA contract advisors a two percent contract advisor compensation fee (Exhibit Agent Fee). Therefore, baseline agent compensation for 2014 NFL Draft Year was calculated by multiplying the present value of Bus Cook's 2014 Draftees sum of cashflows by the two percent agent commission fee allowed within the NFLPA Regulations. The 2014 baseline result was $1,269,011 (Exhibit Loss Profits); and 5.) Lastly, as a result of the breach in contract between the Plaintiff and the NFLPA the Plaintiff could not take the exam again for five years. Therefore, the Plaintiff suffered loss profits because he was denied draft classes similar to Bus Cook and the commissions related to such draft classes for the years 2015, 2016, 2017, 2018, and 2019 Draftee. Therefore, the 2015 loss profit draft class was calculated at an 8 percent growth rate of the Bus Cook's 2014 baseline draft class' agent compensation. The 2016 loss profit draft class was calculated at an 8 percent growth rate of the Plaintiff's 2015 loss profit draft class' agent compensation. The 2017 loss profit draft class was calculated at an 8 percent growth rate of the Plaintiff's 2016 loss profit draft class' agent compensation. The 2018 loss profit draft class was calculated at an 8 percent growth rate of the Plaintiff's 2017 loss profit

draft class' agent compensation. The 2019 loss profit draft class was calculated at an 8 percent growth rate of the Plaintiff's 2018 loss profit draft class' agent compensation. The 8 percent growth rate is based on Bus Cook's 2014 agent compensation based on draft class 2014 rookie salaries minus Bus Cook's 2013 agent compensation based on his 2013 draft class rookie salaries divided by Bus Cook's 2013 agent compensation based on draft class 2013 rookie salaries (Exhibit Loss Profit). The total of the Plaintiff's projected 2015, 2016, 2017, 2018, and 2019 draft class' loss profit agent compensation was calculated at $8,040,364 minus NFLPA contract advisor fee expenses of $7,500 plus insurance or $8,028,854 (Exhibit Profit Loss). The case Jones &amp; Laughlin Steel Corp. v. Pfeifer, 462 U.S. 523, 103 S.Ct. 2541, 76 L. Ed. 2d 768 (1983) says that tort awards must be discounted to present value. The aforementioned Bus Cook agent compensation calculations 1.), 2.), 3.), 4.), and 5.) are identified on The Plaintiff's Estimated Business Loss Opinion Evidence (Exhibit Profit Loss).

*Loss Profits On Other Contracts* – Marketing and Endorsements

In addition to loss profits associated with NFLPA commissions, the Plaintiff as a result of the wrongful termination between the Plaintiff and the NFLPA, suffered a loss of other contracts (i.e. marketing and endorsements) that are collateral to the agent contract with a perspective NFL Player as stated in paragraph 21 of the complaint. For example, agent Ben Dogra filed a lawsuit against Robert Griffin III (RG3) to recoup nearly $659,000 in unpaid commissions related to RG3's marketing and endorsement agreements from 2014 to 2016. RG3 initially agreed to pay 15 percent commission on marketing and endorsement deals negotiated on his behalf (Exhibit RG3 Marketing and Endorsements).

In conclusion, this federal court has subject matter jurisdiction over this case because 1.) the

Plaintiff and Appellee have state diversity citizenship, 2.) the amount-in-controversy is $25,000,000 as a result of intangible damages (Exhibit Medical Affidavit), loss profits agent commission compensation calculated at $8,028,864 (Exhibit Loss Profit), and loss profits related to other contracts are at $659,000 (Exhibit RG3); and 3.) To that end, this complaint is requesting this court to rule on the Plaintiff's wrongful termination and violation fourteenth amendment claims. WHEREFORE, Plaintiff demands judgement against the NFLPA for Twenty-five Million ($25,000,000), exclusive of interest and cost.

<u>COUNT I - WRONGFUL TERMINATION</u>

15. Plaintiff adopts by reference the allegations contained in paragraphs 1 through 14 of this Complaint with the same effect as if herein fully set forth.

16. While the Defendants attempt to cabin Plaintiff's claims within the framework of state tort or contract law, the factual record reveals that Plaintiff's termination from eligibility and future employment as an NFL agent was effectuated by the NFLPA through a process that lacked transparency, objective standards, and meaningful appellate review.

Plaintiff challenges:

☐ The scoring of the NFLPA's certification exam;

☐ The setting of allegedly arbitrary and discriminatory passing criteria;

☐ The denial of certification despite prior qualification and eligibility;

☐ The deprivation of a meaningful opportunity to appeal such adverse determinations.

Taken together, these actions are not mere regulatory discretion—they amount to a de facto termination of Plaintiff's occupational status and liberty interest in his profession. Under both federal common law and constitutional jurisprudence, wrongful interference with a protected occupational interest, when done arbitrarily or capriciously, constitutes wrongful termination and

34

may be actionable under § 1983.

17. It is undisputed upon reviewing the evidence that the NFLPA appeal hearing

provided to the Joe Briggs and the NFLPA was not "….in accordance with "the" Voluntary

Labor Rules of the American Arbitration Association" according to section 5(E) of the NFLPA

Regulations because THE VOLUNTARY LABOR RULES did not exist within the AAA.

According to the AAA said rules has not existed since the 1980s. The

AAA said that all appeal hearing conducted according to "the" AAA have a

12-digit case numbers that includes the letter S. The NFLPA appeal provided to

the Plaintiff provided the case number NFLPA-DC-05 (Exhibit O page 1).

18.   That within the duty to provide due process, the NFLPA misrepresented the fact by

allowing the Plaintiff to contract with the NFLPA in belief that the Plaintiff could appeal the

Application for Certification that was denied for failure to "pass the exam" and receive an appeal

hearing conducted using the "Voluntary Labor Arbitration Rules" of the AAA.  The Section 2(D)

of the NFLPA Regulations states that "The appeal shall be processed and resolved in accordance

with arbitration procedures set forth in Section 5(E) and 5 (H) of these Regulations."  Section

5(E) states "The hearing shall be conducted in accordance with the Voluntary Labor Arbitration

Rules of the American Arbitration Association (AAA).  That said, the AAA rules govern hearing

for persons a party to a collective bargaining agreement.

WHEREFORE, Plaintiff demands judgement against the NFLPA for damages of Twenty-Five

Million dollars, exclusive of interest and cost.

<u>COUNT  II  -  VIOLATION OF FOURTEEN AMENDMENT</u>

19.  Plaintiff adopts by reference the allegations contained in paragraphs 1 through 39 of this
Complaint with the same effect as if herein fully set forth.


20.  Defendants argue that the NFLPA is a private actor and that the Agent Regulations are not
governed by the Constitution. This position is incorrect as a matter of law. The NFLPA derives
its exclusive authority from federal law, specifically the National Labor Relations Act (NLRA),
29 U.S.C. § 159(a). That statute confers exclusive representation authority on labor organizations
for purposes of collective bargaining. When such a union exercises that authority to establish and
enforce rules that govern access to a professional labor market (here, player representation in the
NFL), its actions are sufficiently entangled with federal power to constitute state action for the
purposes of the Fourteenth Amendment. Moreover, when a union serves as a gatekeeper to a
professional license or career path—as is the case here—it assumes a quasi-governmental role.
The denial or revocation of a professional license or opportunity to work without due process or
equal protection violates clearly established constitutional principles.


21.  PLAINTIFF WAS DENIED PROCEDURAL DUE PROCESS

The Due Process Clause of the Fourteenth Amendment prohibits the deprivation of a liberty or
property interest without fair procedure. It is well-established that the right to pursue a lawful
profession is a liberty interest protected by the Constitution. See Greene v. McElroy, 360 U.S.
474, 492(1959); Board of Regents v. Roth, 408 U.S. 564, 572 (1972).  In this case, Plaintiff's
right to work as a certified agent was revoked or denied based on a non-reviewable decision
made by the NFLPA. No adequate notice, opportunity to be heard, or impartial tribunal was

provided—thus violating the minimum procedural safeguards guaranteed by the Fourteenth Amendment.

<u>COUNT III - PUNITIVE DAMAGE</u>

22.. That the Plaintiff incorporates Paragraphs 1 – 21 herein by reference.

23.  That the acts of the Joe Briggs and the NFLPA, herein were performed with actual malice and/or reckless   indifference to the rights of the Plaintiff.

24.. That the acts of the Joe Briggs and the NFLPA, herein were performed with actual malice and/or reckless indifference to the rights of the Plaintiff.

25..  That the acts of the NFLPA cannot be tolerated in a civilized society and merit the punishment of the NFLPA which will thereby discourage others from similar actions.

A WHEREFORE, Plaintiff demands judgment against NFLPA for damages for Twenty-five Million Dollars ($25,000,000) in compensatory and punitive damages, exclusive of interest and cost.

ESPECTFULLY SUBMITTED,

HENRY SEARCY, JR., PRO SE

12804 Willow Marsh Lane

Bowie, Maryland 20720

EXHIBIT AAA

**SECTION 5(B)**

ance against a player or Contract Advisor by (i) sending a written grievance by prepaid certified mail to the player or Contract Advisor or by personal delivery of the grievance to the player or Contract Advisor, and (ii) sending a copy to the NFLPA. The written grievance shall set forth the facts and circumstances giving rise to the grievance, the provision(s) of the agreement between the player and Contract Advisor alleged to have been violated, if applicable, and the relief sought. In addition, a properly and fully completed Section 5 Grievance Notification Form (Attached as Appendix F) shall be attached to the written grievance and sent to the respondent, with a copy to the NFLPA.

**C.  Answer**

The party against whom a grievance has been filed ("the respondent") shall answer the grievance in writing by certified mail or personal delivery to the grievant and the NFLPA within twenty (20) calendar days of receipt of the grievance. The answer shall admit or deny the facts alleged in the grievance and shall also briefly set forth, where applicable, the reasons why the respondent believes the grievance should be denied. No later than thirty (30) days after receipt of the grievance, the NFLPA shall provide the Arbitrator with copies of the grievance and answer and all other relevant documents. If an answer is not filed within this time limit, the Arbitrator, in his/her discretion, may issue an order where appropriate, granting the grievance and the requested relief upon satisfactory proof of the claim.

**D.  Arbitrator**

The NFLPA shall select a skilled and experienced person to serve as the outside impartial Arbitrator for all cases arising hereunder. The Committee on Agent Regulation and Discipline ("CARD") may, at its discretion, appoint up to two (2) additional arbitrators so as to create a panel of three (3) arbitrators to hear cases arising hereunder.

**E.  Hearing**

After receipt of the grievance documents pursuant to this Section 5(C), or receipt of an appeal of a denial of Certification pursuant to Section 2(D), the Arbitrator shall select a time and place for a hearing on the dispute, giving due consideration to the convenience of the parties involved and the degree of urgency for resolution of the dispute. Upon written request from either party prior to the hearing, the NFLPA shall provide the parties copies of documents in its possession which are relevant to the dispute. These documents shall include but not be limited to NFL Player Contracts, other salary information, and Standard Representation Agreements. The Arbitrator may, at his/her discretion, order discovery in disputes between Contract Advisors filed pursuant to Section 5(A)(5).

The hearing shall be conducted in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association. At such hearing, all parties to the dispute and the NFLPA will have the right to present, by testimony or otherwise, any evidence relevant to the grievance. If a witness is unavailable to come to the hearing, the witness' testimony may be taken by telephone conference call at the discretion of the Arbitrator. All hearings shall be transcribed. At the close of the hearing or within thirty (30) days thereafter, the Arbitrator shall issue a written decision. At the hearing, the grievant shall have the burden of proving, by a preponderance of the evidence, the allegations of the grievance.

Such decision shall constitute full, final and complete disposition of the grievance, and will be binding upon the player and Contract Advisor involved; provided, however, that the Arbitra-

SECTION 4(C)

### C.  Existing Representation Agreements

Any representation agreement between an NFL player and a Contract Advisor which was signed between March 11, 2011 and September 9, 2011 shall remain in full force and effect and shall govern the relationship between the Contract Advisor and the player. Any disputes between the parties concerning such agreements may be submitted for arbitration under these Regulations if both the player and the Contract Advisor agree in writing to do so.

### SECTION 5: ARBITRATION PROCEDURES

### A.  Disputes

This arbitration procedure shall be the exclusive method for resolving any and all disputes that may arise from the following:

(1) Denial by the NFLPA of an Applicant's Application for Certification;

(2) Any dispute between an NFL player and a Contract Advisor with respect to the conduct of individual negotiations by a Contract Advisor;

(3) The meaning, interpretation or enforcement of a fee agreement;

(4) Any other activities of a Contract Advisor within the scope of these Regulations;

(5) A dispute between two or more Contract Advisors with respect to whether or not a Contract Advisor interfered with the contractual relationship of a Contract Advisor and player in violation of Section 3(B)(21). If a Contract Advisor proves such a violation of Section 3(B)(21), then the Arbitrator shall award reasonable damages proven and/or any money award which he/she deems equitable; and/or

(6) A dispute between two or more Contract Advisors with respect to their individual entitlement to fees owed, whether paid or unpaid, by a player-client who was jointly represented by such Contract Advisors, or represented by a firm with which the Contract Advisors in question were associated. In such cases, at player's option any fees paid or payable by the player after the dispute arises shall be placed in escrow pending final resolution of such dispute, and paid out of escrow in accordance with the Arbitrator's decision.

(With respect to any dispute that may arise pursuant to paragraph (1) above, the procedure for filing an appeal and invoking arbitration is set forth in these Regulations at Section 2(D). Once arbitration has been invoked, the procedure set forth in Section 5(E)-(H) below shall apply.)

### B.  Filing

The arbitration of a dispute under Section 5(A)(2)-(5) above shall be initiated by the filing of a written grievance either by the player or Contract Advisor. Any such grievance must be filed within six (6) months from the date of the occurrence of the event upon which the grievance is based or within six (6) months from the date on which the facts of the matter become known or reasonably should have become known to the grievant, whichever is later. A player need not be under contract to an NFL club at the time a grievance relating to him hereunder arises or at the time such grievance is initiated or processed.

A player may initiate a grievance against a Contract Advisor by (i) sending the written grievance by prepaid certified mail to the Contract Advisor's business address or by personal delivery at such address, and (ii) sending a copy to the NFLPA. A Contract Advisor may initiate a griev-





**.gov** (/Home.aspx/index)

Mayor Muriel Bowser

**311 Online (https://311.dc.gov)**      **Agency Directory (https://dc.gov/directory)**

**Online Services (https://dc.gov/online-services)**      **Accessibility (https://dc.gov/page/dcgov-accessibility-policy)**

Home (/Home.aspx)

Edit Account (/Account.aspx/AccountManagement)

Sign Out (/Account.aspx/LogOff?signoutFromCropLogin=true)

# NATIONAL FOOTBALL LEAGUE PLAYERS ASSOCIATION - Initial File Number: 971201

Main        Reports        Trade Names        Beneficial Owners

## Entity Info

**Business Name**
NATIONAL FOOTBALL LEAGUE PLAYERS

**Suffix**
ASSOCIATION

**Registration / Effective Date**
4/16/1997

**Commencement Date**
4/16/1997

**Entity Status**
Active

**Foreign Name**
NA

**Date of Organization**
4/16/1997

**State**
Virginia

**Country**
USA

# Business Address

**Line1**
1133 20th St NW

**Line2**
Suite 600

| City | State | Zip |
|------|-------|-----|
| Washington | District of Columbia | 20036 |



**Is non-commercial Registered Agent?**
No

**Name**
C T CORPORATION SYSTEM

# Address

**Line1**

1015 15th St NW

**Line2**

Suite 1000

**City**   **State**   **Zip**

Washington   District of Columbia   20005

**Email**

CLS-CTWashingtonDCEulfillment@wolterskluwer.com

## Return to Home

---

### District News

- Mayor's Public Schedule (https://mayor.dc.gov/newsroom)
- Citywide News (https://newsroom.dc.gov)
- Citywide Calendar (https://calendar.dc.gov/events)
- Subscribe to Receive Emails (https://service.govdelivery.com/accounts/DCWASH/subscriber/new)
- Subscribe to Text Alerts (https://hsema.dc.gov/page/alertdc)
- Subscribe to Newsletters (https://public.govdelivery.com/accounts/DCWASH/subscriber/new)

### District Initiatives

- Green DC (https://green.dc.gov)
- Grade DC (https://grade.dc.gov)
- Age-Friendly DC (https://agefriendly.dc.gov)
- Sustainable DC (https://sustainable.dc.gov)
- Connect DC (https://connect.dc.gov)
- Great Streets (https://greatstreets.dc.gov)

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Henry Searcy, Jr.
_____
                                    Plaintiff
                vs.

National Football League Players Association
_____
                                    Defendant

Case Number **2025-CAB-005163**

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Henry Searcy, Jr., Pro Se
_____
Name of Plaintiff's Attorney

12804 Willow Marsh Lane
_____
Address
Bowie, MD 20720

(202) 904-9052
_____
Telephone

Clerk of the Court

By _____
                          Deputy Clerk

Date ____8-6-2025____

如需翻译，请打电话 (202) 879-4828    Veuillez appeler au (202) 879-4828 pour une traduction    Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202)879-4828로 전화주십시오.    የአማርኛ ትርጉም ለማግኘት፣ (202) 879-4828 ይደውሉ፡

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vea al dorso la traducción al español





# TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA
## DIVISIÓN CIVIL
### Sección de Acciones Civiles
500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001
Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov

_____
Demandante

contra

Número de Caso: _____

_____
Demandado

## CITATORIO

Al susodicho Demandado:

Por la presente se le cita a comparecer y se le requiere entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

A usted también se le requiere presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

_____           *SECRETARIO DEL TRIBUNAL*
Nombre del abogado del Demandante

                                                   Por: _____
_____                    Subsecretario
Dirección

                                                   Fecha _____
_____
Teléfono
如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Dể có một bài dịch, hãy gọi (202) 879-4828
번역을원하시면(202)879-4828 로전화주십시요         የአማርኛ ትርጉም ለማግኘት (202) 879-4828  ይደውሉ

IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, *NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO.*

Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                                    Super. Ct. Civ. R. 4

**Superior Court of the District of Columbia**
**CIVIL DIVISION**
**Civil Actions Branch**
**500 Indiana Avenue, N.W., Suite 5000 Washington, D.C. 20001**
**Telephone: (202) 879-1133 Website: www.dccourts.gov**

Henry Searcy, Jr,
_____ Plaintiff
vs.

Joe Briggs
_____ Defendant

Case Number **2025-CAB-005163**

## SUMMONS

To the above named Defendant:

You are hereby summoned and required to serve an Answer to the attached Complaint, either personally or through an attorney, within twenty one (21) days after service of this summons upon you, exclusive of the day of service. If you are being sued as an officer or agency of the United States Government or the District of Columbia Government, you have sixty (60) days after service of this summons to serve your Answer. A copy of the Answer must be mailed to the attorney for the plaintiff who is suing you. The attorney's name and address appear below. If plaintiff has no attorney, a copy of the Answer must be mailed to the plaintiff at the address stated on this Summons.

You are also required to file the original Answer with the Court in Suite 5000 at 500 Indiana Avenue, N.W., between 8:30 a.m. and 5:00 p.m., Mondays through Fridays or between 9:00 a.m. and 12:00 noon on Saturdays. You may file the original Answer with the Court either before you serve a copy of the Answer on the plaintiff or within seven (7) days after you have served the plaintiff. If you fail to file an Answer, judgment by default may be entered against you for the relief demanded in the complaint.

Henry Searcy, Jr.
_____
Name of Plaintiff's Attorney

12804 Willow Marsh Lane
_____
Address

Bowie, MD 20720

(202) 904-9052
_____
Telephone

_Clerk of the Court_

By M. Watson
_____
Deputy Clerk

Date 8-6-2025

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면, (202) 879-4828로 전화하십시오.        የአማርኛ ትርጉም ለማግኘት (202) 879-4828 ይደውሉ

IMPORTANT: IF YOU FAIL TO FILE AN ANSWER WITHIN THE TIME STATED ABOVE, OR IF, AFTER YOU ANSWER, YOU FAIL TO APPEAR AT ANY TIME THE COURT NOTIFIES YOU TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY DAMAGES OR OTHER RELIEF DEMANDED IN THE COMPLAINT. IF THIS OCCURS, YOUR WAGES MAY BE ATTACHED OR WITHHELD OR PERSONAL PROPERTY OR REAL ESTATE YOU OWN MAY BE TAKEN AND SOLD TO PAY THE JUDGMENT. IF YOU INTEND TO OPPOSE THIS ACTION, _DO NOT FAIL TO ANSWER WITHIN THE REQUIRED TIME._

If you wish to talk to a lawyer and feel that you cannot afford to pay a fee to a lawyer, promptly contact one of the offices of the Legal Aid Society (202-628-1161) or the Neighborhood Legal Services (202-279-5100) for help or come to Suite 5000 at 500 Indiana Avenue, N.W., for more information concerning places where you may ask for such help.

See reverse side for Spanish translation
Vca al dorso la traducción al español

CV-3110 [Rev. June 2017]                                                                    Super. Ct. Civ. R. 4





**TRIBUNAL SUPERIOR DEL DISTRITO DE COLUMBIA**
**DIVISIÓN CIVIL**
**Sección de Acciones Civiles**
**500 Indiana Avenue, N.W., Suite 5000, Washington, D.C. 20001**
**Teléfono: (202) 879-1133 Sitio web: www.dccourts.gov**

_____
                                    Demandante

                contra                                          Número de Caso: _____

_____
                                    Demandado

**CITATORIO**

Al susodicho Demandado:

    Por la presente se le cita a comparecer y se le require entregar una Contestación a la Demanda adjunta, sea en persona o por medio de un abogado, en el plazo de veintiún (21) días contados después que usted haya recibido este citatorio, excluyendo el día mismo de la entrega del citatorio. Si usted está siendo demandado en calidad de oficial o agente del Gobierno de los Estados Unidos de Norteamérica o del Gobierno del Distrito de Columbia, tiene usted sesenta (60) días, contados después que usted haya recibido este citatorio, para entregar su Contestación. Tiene que enviarle por correo una copia de su Contestación al abogado de la parte demandante. El nombre y dirección del abogado aparecen al final de este documento. Si el demandado no tiene abogado, tiene que enviarle al demandante una copia de la Contestación por correo a la dirección que aparece en este Citatorio.

    A usted también se le require presentar la Contestación original al Tribunal en la Oficina 5000, sito en 500 Indiana Avenue, N.W., entre las 8:30 a.m. y 5:00 p.m., de lunes a viernes o entre las 9:00 a.m. y las 12:00 del mediodía los sábados. Usted puede presentar la Contestación original ante el Juez ya sea antes que usted le entregue al demandante una copia de la Contestación o en el plazo de siete (7) días de haberle hecho la entrega al demandante. Si usted incumple con presentar una Contestación, podría dictarse un fallo en rebeldía contra usted para que se haga efectivo el desagravio que se busca en la demanda.

                                                    _SECRETARIO DEL TRIBUNAL_

_____
Nombre del abogado del Demandante

                                            Por: _____

_____
Dirección                                                Subsecretario

                                            Fecha _____
_____
Teléfono

如需翻译,请打电话 (202) 879-4828        Veuillez appeler au (202) 879-4828 pour une traduction        Để có một bài dịch, hãy gọi (202) 879-4828

번역을 원하시면 (202) 879-4828 로 전화주십시오           የትርጉም እርዳታ ከፈለጉ (202) 879-4828 ይደውሉ

    IMPORTANTE: SI USTED INCUMPLE CON PRESENTAR UNA CONTESTACIÓN EN EL PLAZO ANTES MENCIONADO O, SI LUEGO DE CONTESTAR, USTED NO COMPARECE CUANDO LE AVISE EL JUZGADO, PODRÍA DICTARSE UN FALLO EN REBELDÍA CONTRA USTED PARA QUE SE LE COBRE LOS DAÑOS Y PERJUICIOS U OTRO DESAGRAVIO QUE SE BUSQUE EN LA DEMANDA. SI ESTO OCURRE, PODRÍA RETENÉRSELE SUS INGRESOS, O PODRÍA TOMÁRSELE SUS BIENES PERSONALES O BIENES RAÍCES Y SER VENDIDOS PARA PAGAR EL FALLO. SI USTED PRETENDE OPONERSE A ESTA ACCIÓN, _NO DEJE DE CONTESTAR LA DEMANDA DENTRO DEL PLAZO EXIGIDO._

    Si desea conversar con un abogado y le parece que no puede pagarle a uno, llame pronto a una de nuestras oficinas del Legal Aid Society (202-628-1161) o el Neighborhood Legal Services (202-279-5100) para pedir ayuda o venga a la Oficina 5000 del 500 Indiana Avenue, N.W., para informarse sobre otros lugares donde puede pedir ayuda al respecto.

Vea al dorso el original en inglés
See reverse side for English original

CV-3110 [Rev. June 2017]                                                            Super. Ct. Civ. R. 4

# Superior Court of the District of Columbia

CIVIL DIVISION - CIVIL ACTIONS BRANCH
INFORMATION SHEET

Henry Searcy Jr
_Plaintiff(s)_

vs

National Football League Players Association
_Defendant(s)_

Case Number: 2025-CAB-005163

Date: _____

☐ One of the defendants is being sued in their official capacity.

| Name: *(Please Print)* Henry Searcy Jr | Relationship to Lawsuit |
|---|---|
| Firm Name: | ☐ Attorney for Plaintiff |
| Telephone No.:    DC Bar No.: | ☑ Self (Pro Se) ☐ Other: _____ |

TYPE OF CASE:  ☐ Non-Jury    ☑ 6 Person Jury    ☐ 12 Person Jury
Demand: $ 25,000,000    Other: _____

PENDING CASE(S) RELATED TO THE ACTION BEING FILED
Case No.:_____  Judge:_____  Calendar #:_____

Case No.:_____  Judge:_____  Calendar #:_____

NATURE OF SUIT:    *(Check One Box Only)*

**CONTRACT**
☐ Breach of Contract
☐ Breach of Warranty
☐ Condo/Homeowner Assn. Fees
☐ Contract Enforcement
☐ Negotiable Instrument

**COLLECTION/INS. SUB**
☐ Debt Collection
☐ Insurance Subrogation
☐ Motion/Application for Judgment by Confession
☐ Motion/Application Regarding Arbitration Award

**EMPLOYMENT DISPUTE**
☐ Breach of Contract
☐ Discrimination
☐ Wage Claim
☐ Whistle Blower
☑ Wrongful Termination

**REAL PROPERTY**
☐ Condo/Homeowner Assn. Foreclosure
☐ Declaratory Judgment
☐ Drug Related Nuisance Abatement
☐ Ejectment
☐ Eminent Domain
☐ Interpleader
☐ Other
☐ Quiet Title
☐ Specific Performance

☐ **FRIENDLY SUIT**
☐ **HOUSING CODE REGULATIONS**
☐ **QUI TAM**
☐ **STRUCTURED SETTLEMENTS**

**ADMINISTRATIVE PROCEEDINGS**
☐ Administrative Search Warrant
☐ App. for Entry of Jgt. Defaulted Compensation Benefits
☐ Enter Administrative Order as Judgment
☐ Libel of Information
☐ Master Meter
☐ Petition Other

☐ Release Mechanics Lien
☐ Request for Subpoena

**MALPRACTICE**
☐ Medical – Other
☐ Wrongful Death

**AGENCY APPEAL**
☐ Dangerous Animal Determination
☐ DCPS Residency Appeal
☐ Merit Personnel Act (OEA)
☐ Merit Personnel Act (OHR)
☐ Other Agency Appeal

☐ **APPLICATION FOR INTERNATIONAL FOREIGN JUDGMENT**

CV-496/February 2023

# Information Sheet, Continued

| CIVIL ASSET FORFEITURE | TORT |
|---|---|
| ☐ Currency | ☐ Abuse of Process |
| ☐ Other | ☐ Assault/Battery |
| ☐ Real Property | ☐ Conversion |
| ☐ Vehicle | ☐ False Arrest/Malicious Prosecution |
| **NAME CHANGE/VITAL RECORD AMENDMENT** | ☐ Libel/Slander/Defamation |
| ☐ Birth Certificate Amendment | ☐ Personal Injury |
| ☐ Death Certificate Amendment | ☐ Toxic Mass |
| ☐ Gender Amendment | ☐ Wrongful Death (Non-Medical Malpractice) |
| ☐ Name Change | |

**GENERAL CIVIL**
- ☐ Accounting
- ☐ Deceit (Misrepresentation)
- ☐ Fraud
- ☐ Invasion of Privacy
- ☐ Lead Paint
- ☐ Legal Malpractice
- ☐ Motion/Application Regarding Arbitration Award
- ☑ Other - General Civil  *14ᵗʰ AMENDMENT*

- ☐ Product Liability
- ☐ Request for Liquidation
- ☐ Writ of Replevin
- ☐ Wrongful Eviction

**CIVIL I/COMPLEX CIVIL**
- ☐ Asbestos

**MORTGAGE FORECLOSURE**
- ☐ Non-Residential
- ☐ Residential

**STATUTORY CLAIM**
- ☐ Anti – SLAPP
- ☐ Consumer Protection Act
- ☐ Exploitation of Vulnerable Adult
- ☐ Freedom of Information Act (FOIA)
- ☐ Other

**TAX SALE FORECLOSURE**
- ☐ Tax Sale Annual
- ☐ Tax Sale Bid Off

**VEHICLE**
- ☐ Personal Injury
- ☐ Property Damage

☐ **TRAFFIC ADJUDICATION APPEAL**

☐ **REQUEST FOR FOREIGN JUDGMENT**

Filer/Attorney's Signature

08/05/2025
Date